# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE UNITED STATES GOVERNMENT for the use and benefit of RUSSEL SIGLER, INC., a New Mexico corporation, d.b.a. Sigler,<br><br>          Plaintiff,<br><br>     vs.<br><br>ASSOCIATED MECHANICAL, INC., a Nevada corporation; AMERIND BUILDERS, LLC, an Arizona corporation; E.C. SCARBOROUGH, an individual surety,<br><br>          Defendants. | Case No.: 2:09-cv-01238-RLH-GWF<br><br>**O R D E R**<br><br>(Motion for Partial Summary Judgment–#37; Cross-motion for Summary Judgment–#41) |

Before the Court is Plaintiff Russel Sigler, Inc.'s ("Sigler") **Motion for Partial Summary Judgment** (#37), filed May 26, 2010. The Court has also considered Defendants Amerind Builders, LLC's and E.C. Scarborough's (collectively "Defendants") Opposition (#40), filed July 1, 2010, and Sigler's Reply (#43), filed July 15, 2010.

Also before the Court is Defendants' **Cross-Motion for Summary Judgment** (#41), filed July 1, 2010. The Court has also considered Sigler's Opposition (#42), filed July 15, 2010, and the Defendants' Reply (#44), filed August 2, 2010.

1

**BACKGROUND**

The following facts are as alleged by Sigler unless stated otherwise. This dispute involves a United States Air Force construction project known as Bldg. B718 and Bldg. B707, under Contract No. FA4861-07-A027, located at Creech Air Force Base in Indian Springs, Nevada (the "Project"). The Air Force hired Amerind as the general contractor on the Project and Amerind subcontracted with Associated Mechanical for a portion of the Project. Amerind obtained a payment bond from E.C. Scarborough. This bond was numbered AMERINDPP111407 (the "Bond") and was for the sum of $1,028,422.00. Associated Mechanical later contracted with Sigler to obtain heating, ventilation, and air conditioning supplies for use in the Project, which was to be paid upon invoicing. Sigler informed Amerind of the materials that Sigler planned on providing to the project. Sigler delivered these materials on December 29, 2008, and subsequently invoiced Associated Mechanical $203,550.53. Sigler has not been paid. Sigler notified Amerind of Associated Mechanical's failure to pay for the materials. Sigler then demanded that Amerind and E.C. Scarborough pay the $203,550.53 invoice but they refused.

Sigler commenced this case in July 2009 asserting five claims. In this motion, Sigler only seeks summary judgment on its claims on the payment bond against Amerind and Scarborough (second cause of action) and for unjust enrichment against Amerind (fifth cause of action). Amerind and Scarborough responded with a cross-motion for summary judgment on the same claims. For the reasons stated below, the Court denies Sigler's motion and grants the defendants' cross-motion in part and denies it in part.

**DISCUSSION**

**I.   Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any

1  material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);
2  *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a
3  sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party
4  and a dispute is "material" if it could affect the outcome of the suit under the governing law.
5  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Where reasonable minds could
6  differ on the material facts at issue, however, summary judgment is not appropriate.  *Warren v.*
7  *City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  In
8  evaluating a summary judgment motion, a court views all facts and draws all inferences in the light
9  most favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793
10 F.2d 1100, 1103 (9th Cir. 1986).
11         The moving party bears the burden of showing that there are no genuine issues of
12 material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry
13 its burden of production, the moving party must either produce evidence negating an essential
14 element of the nonmoving party's claim or defense or show that the nonmoving party does not
15 have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
16 *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the
17 moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
18 "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
19 The nonmoving party "may not rely on denials in the pleadings but must produce specific
20 evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
21 *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
22 show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
23 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).
24 /
25 /
26 /

**II.     Cross Motions for Summary Judgment**

      **A.     Bond Payment Claim**

          The Miller Act, 40 U.S.C. § 3131, *et seq.*, requires government contractors to obtain performance and payment bonds approved by the contracting government agent for federal projects in order to protect those supplying labor and material to the project. 40 U.S.C. § 3131(b); *United States f/u/o Conveyor Rental & Sales Co. v. Aetna Cas. & Surety Co.*, 981 F.2d 448, 450 (9th Cir. 1992). The Miller Act "is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *United States ex rel. Sherman v. Carter*, 353 U.S. 210 (1957). Miller Act bonds are meant to replace mechanics' liens available in private construction projects since mechanics' liens cannot attach to federally owned property. *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 122 (1974). Further, the Court construes clear and unambiguous contract language according to its plain meaning.

          The ultimate issue here is whether or not a surety may contractually limit the duration of a payment bond under the Miller Act. The parties, however, did not provide any case law on this subject nor does Sigler point to statutory language that states a bond cannot be of limited duration. The Court was also unable to find case law directly on point. However, there is some persuasive authority that can assist the Court in analyzing the issues presented. Sigler argues that a Miller Act bond cannot be time limited and that allowing a surety to limit the duration of a bond to less than the actual project length would impede the purpose of the Miller Act to protect all of the subcontractors and suppliers to a federal building project. Additionally, Sigler argues that if the Bond did expire, then Amerind violated the Miller Act by not providing a second bond on the project after the Bond expired. Conversely, the Defendants argue that there is no language in the Miller Act preventing a bond from expiring, time limitations are allowed, this Bond was time limited, and Sigler's claim falls outside of the Bond's effective period.

/

### 1. Persuasive Authority on Bond Expiration

The District Court for the District of Columbia has addressed the issue of Miller Act bond expiration in the context of option contracts. *United States f/u/o Modern Electric Inc. v. Ideal Electronic Security, Inc.*, 868 F.Supp. 10 (D.D.C. 1994), *rev'd on other grounds*, 81 F.3d 240 (D.C. Cir. 1996). In *Modern Electric*, the underlying government contract and the bond at issue stated that the bond's coverage was limited to the first year of a multi-year option contract. *Id.* at 13. In such a contract, the first year is guaranteed and then the government has the option of letting it expire or extending it for a certain number of years or a certain number of times for one year intervals. Specifically, the *Modern Electric* contract required the contractor to obtain new bonds if the government exercised any of the contracts' option years. *Id.* Therefore, the court determined that work done outside of the first year was not covered by the bond. *Id.* The Court agrees with this reasoning.

The *Modern Electric* court further determined that the contractor's failure to obtain a new bond covering the subsequent contract years and the government's failure to actually require the contractor to obtain new bonds was irrelevant to the question of whether the bond that was obtained covered the work in question. *Id*. at 14. ("Ideal [the contractor] or the Army may have breached its obligation under the Miller Act by failing to ensure that a new payment bond was issued to cover the option year on the contract. That is not reason, however, to impose an obligation on IFIC [the surety] that it did not undertake to bear and for which it apparently collected no premiums.") The Court also agrees with this reasoning.

Another case that discussed the issue of whether Miller Act bonds may have expiration dates in an option contract is *B & M Roofing of Colorado, Inc. v. AKM Associates, Inc.* 961 F.Supp. 1441 (D.CO. 1997). The *B & M* court discussed *Modern Electric* and noted that the surety attempted to limit its durational liability to achieve the same result as in *Modern Electric*, though with different language. *Id.* at 1445. However, the *B & M* court denied summary judgment because the surety continued to collect premiums after the first year of the contract, in the option

5

year, whereas the surety in *Modern Electric* only collected the original premium for the first year of the contract. *Id.* The *B & M* court determined that collecting additional premiums created a fact question as to whether the surety intended to provide coverage during subsequent option years. *Id.*

**2.     Analysis**

In the case at bar, Sigler's claim against Scarborough on the Bond fails because the Bond expired before Sigler performed.[1] Although this case does not involve the option year issues discussed in the cases above, those cases stand for the proposition that a surety can limit durational liability as Scarborough did here. Following that reasoning, the Court finds that the Miller Act does not prevent a surety from setting an expiration date on a payment bond. Next, the Court holds that the Bond and its accompanying and integrated Certificate of Pledged Assets are unambiguous on their face and will interpret them according to their plain meaning and as a single document. The Bond in this case, then, unambiguously states that the bond terminated at the end of the project or after 12 months from the effective date, whichever occurred first. The effective date was November 16, 2007, and therefore the bond expired no later than November 16, 2008 by its plain terms. Therefore, the Bond legitimately terminated on November 16, 2008, 12 months after the bond was effectuated since the project had not terminated by that date.

Sigler admittedly performed and delivered the HVAC units in December 2008–after the bond had expired. Therefore, the Bond does not cover Sigler's performance. To conclude otherwise would subject Scarborough to risk as long as the project lasted, which means Scarborough's bond would still be guaranteeing the project to this day for the single fee he collected in 2007. Further, Sigler presented no evidence to the Court that Scarborough collected or even attempted to collect additional premiums to make this more like the *B & M* case and less like the *Modern Electric* case. Sigler presents no evidence to the Court suggesting that Scarborough may have intended to extend the Bond's coverage dates similar to *B & M* where the surety

---

[1] The Court notes that the Certificate of Pledged assets states that it is to be construed under Florida law. Plaintiff and Defendants at least tacitly agree to and accept this by citing Florida law in their arguments.

collected additional premiums.  Further, this claims is more analogous to *Modern Electric* because Sigler fails to show triable issues of fact that Scarborough was contractually obligated to cover a time period after the bond expired and for which Scarborough collected no premiums.  Therefore, Sigler has not presented a triable issue of fact to show that this bond covered anything beyond its expiration date.  The Court cannot hold a surety liable for coverage that it did not intend to provide.  Therefore, the Court denies Sigler's motion and grants Defendants' cross-motion as to the claim on the bond.[2]

   **B.**  **Unjust Enrichment Claim**

   As a preliminary matter, the Court notes that Washington state law does not control this claim.  Instead, Nevada law controls the unjust enrichment claim.

   "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).  The elements of an unjust enrichment claim are, "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." *Id.*  However, an unjust enrichment claim "is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997).

   The contract between Sigler and Associated Mechanical does not bar an unjust enrichment claim by Sigler against Amerind.  Amerind is correct in asserting that there can be no implied contract where an express contract exists.  However, Amerind is wrong in asserting that Associated Mechanical's contract prevents an unjust enrichment claim against third parties that are

---

[2] The Court, however, notes that it does not address whether the Air Force or Amerind acted contrary to law or are in some way liable for not obtaining additional bonds after the Bond expired.  Further, the Court notes that Sigler's apparent fraud claims regarding Amerind claiming it was bonded were not raised in the complaint, but merely in a response.  Since these issues were not properly before the Court, it does not address them here.

involved in the totality of the transaction. *See Leasepartners*, 942 P.2d at 186–187 (holding that a contract between a sign seller and a lessee did not prevent an unjust enrichment claim by the sign seller against the lessor with whom the sign seller did not have a contract). In this case, Sigler properly alleges that Amerind is in possession of HVACs supplied by Sigler, or at least that they were installed at the contract site. If Amerind has not paid for those HVAC units, either by paying Associated Mechanical or Sigler itself, a claim for unjust enrichment may stand.

The Court finds that neither party has presented sufficient evidence to conclude that it is entitled to summary judgement as a matter of law. Sigler has not presented evidence that Amerind did not pay Associated Mechanical for the HVAC units, though from the record it does not appear that Amerind did so or even claims to have done so. More importantly, the Court believes that there is sufficient dispute as to the value of the goods provided. Even if Sigler could claim the invoiced amount in an action on the Bond against Scarborough, that does not mean that the same invoiced amount is an appropriate amount of damages in an action for unjust enrichment against Amerind who did not agree to Sigler's price terms.

Finally, the Court does not find Amerind's other arguments pertaining to the unjust enrichment claim to be persuasive, particularly those regarding incidental beneficiaries, the UCC, or its assertions that the material only conferred obligation on Amerind and not benefit. Since the parties have not provided sufficient evidence or shown that there is no material, factual dispute, the Court denies both parties' motions for summary judgment on the unjust enrichment claim.

/
/
/
/
/
/
/

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Sigler's Motion for Partial Summary Judgment (#37) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-motion for Summary Judgment is GRANTED in part and DENIED in part as follows:

- GRANTED as to the payment bond claim.
- DENIED as to the unjust enrichment claim.

The Clerk of the Court is directed to dismiss E.C. Scarborough from this case as no claims remain against him.

Dated: December 7, 2010.

_____
**ROGER L. HUNT**
**Chief United States District Judge**